**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

I, Timothy Palchak, being duly sworn, depose and state the following:

1. I have been a police officer with the Metropolitan Police Department since 1994. In 2000, I was promoted to Detective Grade 2 and am currently serving at this rank. During my twelve year tenure with the Metropolitan Police Department I have been assigned to the Third District Patrol Operations, Prostitution Enforcement Unit, and I'm currently assigned to the Northern Virginia Regional Internet Crimes Against Children Task Force. I've received training in the following subject areas: Family Violence and Child Protection, Basic Investigator Course, Interview and Interrogation, Sexual Assault Nurse Examination, Children's Hospital Conference on Responding to Child Maltreatment, Child Abuse and Child Exploitation Investigation techniques, undercover Internet Crimes Against Children (ICAC) investigations course and Image scanning. I've also made numerous arrests and interviewed numerous victims, witnesses, and suspects. As well I've also participated in numerous child abuse investigations, child sex abuse investigations and ICAC investigations. In November of 2005, I received cross designation training from Immigration and Customs Enforcement (ICE).

2. This affidavit is being submitted in support of a search warrant for the following:

   A. A compaq desktop P3 serial #6x31-kn82-n19b

   B. A homemade desktop computer (no serial number)

   C. "stoneman_1" and "treehillfield" (who is further decribed above), or use of Yahoo! Internet Chat rooms.

   D. All records, including keys, storage combinations, passwords, and paperwork. (further described in Attachment A)

   E. Envelops, letters, documents, and other correspondence. etc (further described in Attachment B)

**Initiation of the investigation**

3.      In late June 2006, I the affiant was acting in an undercover capacity as part of a multi-jurisdictional Internet Crimes Against Children (ICAC) Task Force. the affiant was logged onto a Yahoo! private internet chat room as "daddysgrldc," and was posing as a 13-year old female. On that day, an individual using the screen name "stoneman1" initiated contact with "daddysgrldc" using the Yahoo! Instant Messaging service. During the course of the Instant Messaging conversations, the affiant sent to the individual using the screen name "stoneman1" a photograph of a small child that the affiant represented to be a photograph of "daddysgrldc." The child in the photograph was standing on a beach wearing a blue bathing suit with a panda bear on the front of the suit. During the instant messaging conversation, the affiant identified himself as a thirteen year-old female residing at xxxx Adams Street NE in the District of Columbia.

4.      In July 2006, an individual using the screen name "stoneman1" engaged in an instant messaging conversation with the affiant, who was posing as "daddysgrldc." During the conversation, "stoneman1" arranged to meet "daddysgrldc" between 5:00 p.m. and 5:30 p.m. on a specified day in July 2006 at xxxx Adams Street NE, Washington, D.C. for the purpose of engaging in sexual and oral intercourse. At the time specified by "daddysgrldc" (and on the date specified by the affiant), a South Asian male operating a red Saturn vehicle arrived at xxxx Adams Street, NE, Washington, D.C. This individual was approached by Detective Miguel Miranda, with the Metropolitan Police Department, and was asked what he was doing in the area. The individual was not placed under arrest at the time, and stated that he was looking around for a place to live.

5.      In September 2006, while acting in an undercover capacity as "daddysgrldc" in a Yahoo! internet chat room, the affiant was contacted by an individual using the screen name "treehillfield." The individual using the screen name "treehillfield" indicated that he had

2

formerly used the screen name "stoneman1" and that he had changed his screen name. During the instant messaging conversation, the individual using the screen name "treehillfield" indicated to your affiant that he had been stopped by the police in July 2006 on the date that he had originally arranged to meet "daddysgrldc."

6. On September 14, 2006, in the evening hours, the affiant was working in an undercover capacity as "daddysgrldc" in a Yahoo! internet chat room. The individual using the screen name "treehillfield" contacted the affiant through instant messaging. During the conversation, the individual using the screen name "treehillfield" stated: "can I suck your boob in the car … can I touch ur pussy also." The defendant told "daddysgrldc" that he would meet her on September 15, 2006 at 1740 hours, at the Subway Sandwich shop on xx$^{th}$ Street NE in Washington, D.C. On September 15, 2006, at approximately 1740 hours, the affiant observed a South Asian male walking in front of the Subway sandwich shop on xx$^{th}$ Street NE, Washington, D.C. This individual looked inside the sandwich shop, and then continued to walk around the shopping center while looking around. Detective Miguel Miranda confirmed that this individual was the same person that he had stopped in July 2006 in front of xxxx Adams Street NE, Washington, D.C. The affiant followed this subject on foot and stopped him in front of Giant Food approximately one block away from the Subway sandwich shop. The defendant was stopped and placed under arrest. Detective Miranda also identified the defendant's vehicle as the same red Saturn that the defendant drove to xxxx Adams Street NE, District of Columbia, in July 2006.

7. Upon arrest, the defendant was identified as Kesarimangalam Kannan stated that he resided at #x Milestone Manor Court, Germantown, Maryland. At the time of his arrest, the defendant had in his possession a Maryland driver's license identification that matched the aforementioned address.

8. On Saturday, September 16, 2006 a Maryland District Court Judge signed a search warrant for the defendant's home at #x Milestone Manor Court, Germantown, Maryland. The affiant along with Detective Miguel Miranda conducted a cursory search of a computer (Compaq Desktop P3 Serial # 6x31-Kn82-N19b) located in the defendant's home. This search revealed the same picture that the affiant sent to the defendant on a prior date (small child wearing a bathing suit with a panda bear on the front of the suit). This computer along with a homemade desktop computer were seized as evidence and transported to Washington, DC.

9. Based on the affiant's knowledge, training and experience, the affiant knows *that data storage devices, including computers, located in or previously seized from defendant's home may be important to this criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, or instrumentalities of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of crime, contraband, instrumentalities of crime, and/or fruits of crime. In this case, the warrant application requests permission to search and seize both computers and other data storage devices as evidence and instrumentalities of crime as well as data stored in devices that are also evidence and/or contraband.*

10. Based on the affiant's knowledge, training and experience, the affiant knows that engaging in Internet chat room conversations can create evidence of the chat that will be stored on the computer used to access the Internet chat room service. Based on the affiant's knowledge, training and experience in investigations involving computers and electronic evidence, the affiant knows that incriminating evidence can be hidden or otherwise reside on almost any part of a computer's memory. Directories, files names and file extensions need not disclose the true nature of the contents of a file, making it easy for criminals to hide evidence.

4

*Accordingly, searching computers and other storage devices for the evidence described below may require a range of data analysis techniques. In cases such as this one, it is often not possible for agents to gather all relevant materials through "keyword" searches or by looking for only particular directories, file names, or file types. Criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require agents to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described below.*

11.    Based on the affiant's knowledge, training and experience in investigations of child exploitation and Internet Crimes Against Children, the affiant knows that adults who seek out children in Internet chat rooms and attempt to meet those children for sex, often also access child pornography, often accessing such contraband over the Internet and storing such contraband on computer storage devices. The affiant knows that child pornographers generally prefer to store images of child pornography in electronic form as computer files and that further records of Internet activity in search of child pornography can be found on computers used for this purpose.

**Definitions/Terms**

A.    **The terms records," documents," and materials,"** as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing,

typing) or electrical, electronic, magnetic or photo-optical form (including, but not limited to, tape recordings, cassettes, compact discs, electronic, photo-optical or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

B.   **Yahoo!** is a commercial computer service, also known as a commercial bulletin board, offering subscribers the ability to communicate online with other individuals through, *inter alia*, chat rooms, e-mail and/or instant messaging.

C.   **An Internet chat room** is an electronic meeting room provided by Yahoo! and other similar services that allows groups of two or more Internet users to have conversations. An Internet user using an Internet chat room chooses a unique identifier, i.e., a screen name, in order to identify himself or herself to other users of the service. To communicate using a Yahoo! Internet chat room, each user must have access to a computer that is connected to the Internet such that it can communicate with Yahoo! chat servers located in California. Each Yahoo! chat room user can communicate with other users also logged in to Yahoo! at the same time in real time through chat rooms, private chat rooms, or instant messages. Within the system, text messages as well as other types of messages (such as graphic images or photographs) can be sent to a user. Both text and graphics files can be saved to the user's computer=s hard drive or other electronic media for access and printing at any time.

## ATTACHMENT A

**Items to be searched**

The two items to be searched are:

A.   Compaq desktop P3 serial # 6x31-kn82-n19b

B.   Homemade desktop computer (no serial number)


## ATTACHMENT B

**Property to be Seized**


C.   "stoneman_1" and "treehillfield" (who is further described above), or use of Yahoo! Internet chat rooms.

D.   All records, including keys, storage combinations, passwords, and paperwork which indicate any other storage containers or facilities, that could contain evidence of collection, advertising, transport, distribution, receipt, or possession of child pornography.

E.   Envelops, letters, documents, and other correspondence, including but not limited to, electronic mail, chat logs, IRC logs, ICQ logs, all other usage records for distributed file sharing technologies, and electronic messages, offering to distribute and receive visual depictions of minors engaged in sexually explicit conduct, or to show evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect and posses visual depictions of minors engaged in sexually explicit conduct.

**Conclusion**

Based on the foregoing, I, Detective Palchak, respectfully submit that there is probable cause to believe that an individual who resides at # 6 Milestone Manor Court. Germantown, Maryland has violated 18 U.S.C. § 2423(b).  I, therefore, respectfully request that the Court issue a search warrant authorizing a forensic search and examination of the aforementioned items.

_____
Detective Timothy Palchak
Metropolitan Police Department

SWORN TO and SUBSCRIBED before me this \_\_\_\_\_ day of September, 2006, by the said Detective Timothy Palchak.

_____
UNITED STATES MAGISTRATE JUDGE